MELON CARROLL *v.* STATE OF INDIANA.

[No. 574S98. Filed March 24, 1975.]

*M. Daniel Friedland,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Gary M. Crist,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant, Melon Carroll, was convicted of Rape, Ind. Code § 35-13-4-3, being Burns § 10-4201, and Kidnapping, Ind. Code § 35-1-55-1, being Burns § 10-2901, in a trial before Special Judge David McNamar. He was sentenced to a term of two to twenty-one years for Rape and to life imprisonment for Kidnapping. His motion to correct errors was overruled. On appeal, he argues that there was not sufficient evidence to support either of the two convictions.

The evidence presented by the prosecuting witness was that she left her job at the hospital at or a little after midnight, August 2nd-3rd, 1973. She walked to the hospital employees' parking lot. As she approached her car, appellant jumped over the parking lot guardrail and walked over to her. He asked her to unlock the car and get in. She refused, and he grabbed her around the neck. She opened the car, and got in the back seat. Appellant got in after her and asked her to take off her clothes, and she refused. He asked her for her money, and she said she did not have any. And then he

repeated both demands several times. The witness could not get out of the car because it was a two-door car and she was in the back seat. She kept talking to appellant and asking him to let her go. She offered him the car, if he would let her go. She told him that the lot was guarded and that the guard would come by momentarily. Appellant got into the front seat and drove out of the lot.

Appellant had difficulty driving the car, drove around a little and then turned into an alley, where again he asked her to take off her clothes and to give him some money. Another car turned into the alley and then pulled out. The witness suggested they go to her apartment because she knew her roommate would be there and could help her. But, he said, "No, if we go to your apartment, you will call the police." Instead, he drove to his apartment. The witness kept asking where they were going and what he was going to do and suggesting that they talk about it and that he let her go.

She went with him into his apartment building. There was no one around. She continued to talk to him about this being wrong and finally made him promise to let her go if they had intercourse. He undressed her, and they had intercourse. Afterwards she started dressing and reminded him of his promise. He again said he wanted money, and she gave him forty cents, which was all she had. He gave her his phone number and told her to call him the next day, and she said she got paid the next day. He said he would be back in the parking lot the next night if she did not call.

She asked if she could go, and he agreed. When she got down to the foot of the apartment stairs, she was scared because she did not know the neighborhood. She thought maybe she would be attacked again, so she asked appellant to walk her to her car. Appellant did so, and she got in her car and drove away. It was 1:00 a.m., and the witness saw a street sign: New Jersey and 17th. She was lost and on the opposite side of town, but finally arrived at her apartment at 2:00 a.m.

Her roommate testified that the witness was exceedingly upset and nervous and told her what had happened. In the morning, the roommate saw bruises on the witness' neck and hand. The witness went to the hospital and was examined by a doctor. The doctor told her to call the police.

The witness, her father, and the police went to the area of 17th and New Jersey and drove around. The witness found the vacant lot where they had parked and recognized the apartment building. They sat in the car for some time, and appellant came out of the apartment building. The witness identified him.

On appeal, we look to the evidence and the reasonable inferences which support the finding of the trial court. The conviction will be affirmed if, from that viewpoint, there is evidence of probative value from which the trier of fact could reasonably infer that appellant was guilty beyond a reasonable doubt.

Rape is defined in Burns § 10-4201, *supra:*

"Whoever has carnal knowledge of a woman forcibly against her will . . . is guilty of rape."

The uncorroborated testimony of the prosecuting witness suffices to establish the identity of the man. In this case, her ability to identify his apartment building and her knowledge that his given name was Mel helped corroborate her visual identification.

Appellant argues that the witness must resist to a degree which would indicate the act was against her will. This is, of course, true. However, the required resistance need not take the form of an actual attempt to escape or to fight off the attacker in every conceivable set of circumstances. Here, the prosecuting witness' first refusal to cooperate was met with a violent attack by appellant upon her person. In grabbing her in this manner, appellant communicated clearly his willingness to use physical force to accomplish his purposes. His refusal to permit her to leave

the car and apartment and his repeated demands for money and to disrobe were a continuing threat to resume the use of physical force if she did not comply with his demands. In spite of the threat, she repeatedly refused to undress when appellant asked again and again. She pleaded with him not to harm her and to release her. Upon the evidence the trier of fact could have found that the witness was reasonably in fear and agreed to have intercourse as the most reasonable course to protect herself from further harm. The resistance shown by her and the conduct of appellant were sufficient here to establish that the intercourse with appellant was had "forcibly, against her will".

Kidnapping is defined in Burns § 10-2901, *supra:*

> "Whoever kidnaps, or forcibly or fraudulently carries off . . . from any place within this state . . . any person . . . is guilty of kidnapping."

Appellant asked the witness to open the car. When she refused, he grabbed her around the neck. She opened the car, and he got in after her. The witness could not get out because there were no rear doors in her car. After a few minutes, when she refused to undress and told appellant that the security guard would come, he got in the front seat and drove off, eventually to his apartment. This series of actions constituted a forcible carrying away of the prosecuting witness from a place within the state.

There was sufficient evidence on both counts to support the findings of the trial court. The judgment is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

Note.—Reported at 324 N.E.2d 809.