Keith A. DURBIN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45A03–8902–CR–60.

Court of Appeals of Indiana,
Third District.

Dec. 18, 1989.

Stephen Bower, Cohen and Thiros, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A Lake Superior Court jury convicted Keith A. Durbin of criminal deviate conduct, a class B felony. West's AIC 35–42–4–2. He was sentenced to eight years imprisonment. Durbin raises four issues on appeal, which we consolidate and restate as:

1. Whether the evidence is sufficient to support the verdict?

2. Whether the trial court erred in refusing to instruct the jury on battery as a lesser-included offense?

3. Whether the sentence is manifestly unreasonable?

We affirm.

Viewed most favorably to the judgment, the evidence produced at trial shows that at approximately 12:30 a.m. on July 28, 1987, K.W. and several friends stopped at a Shell Station located in Merrillville, Indiana. While there, four men on motorcycles drove up and asked the girls if they wanted a ride. After hesitating, K.W. accepted a ride from a man who identified himself as Kevin on the proviso that she be returned to the gas station within five minutes.

K.W., Kevin and the other motorcyclists rode around town for a short while, after which Kevin and K.W. drove into an isolated pavilion area surrounded by trees. After the two walked to a picnic table, Kevin kissed K.W. K.W. kissed him back willingly, but retreated when Kevin started feeling her breasts. K.W. told Kevin that she did not want to "tease" him and did not want to go "any further". When Kevin said that she had "already teased him", K.W. said that she wanted to leave. K.W. turned and walked back to the motorcycle.

As K.W. returned to the motorcycle, two of the other motorcyclists approached her. They were later identified as Edward Kalberer and Russell Sanchez. Sanchez, acting very upset, grabbed K.W.'s head between his hands, shook it and asked "what the hell was wrong with [her]." (Record at 67.) At the same time, Kalberer fondled K.W.'s breasts and buttocks. Sanchez told K.W. that everything would be easier "if she would just cooperate." (*Id.*) K.W. began crying and asked Kevin to keep the two men away from her, but Kevin mocked her and refused to help. K.W. ran to Kevin and again asked him to keep Kalberer and Sanchez away from her. Kevin conferred with Sanchez and Kalberer, during which K.W. heard Sanchez ask Durbin why he was not doing what he was supposed to do. Durbin then turned to K.W. and asked whether she would "give him head or give him pussy". (Record at 69.) K.W. responded, "yes, whatever you want." (*Id.*)

Kevin told the other two men to leave, then led K.W. to a picnic table located under a canopy. K.W. cried and asked to leave, but Kevin unzipped his pants and pulled her head down on his erect penis. K.W. administered oral sex for several seconds, but stopped when she realized that Kalberer and Sanchez were approaching. K.W. retreated to Kevin's motorcycle, only to be followed by Kalberer and Sanchez. Sanchez again shook K.W.'s head between his hands and asked why she was not cooperating as Kalberer fondled her. Sanchez

then said, "you have to do it with all three of us now." (Record at 71.) K.W., still crying, turned to Kevin and said, "okay [sic], you first." (*Id.*) K.W. indicated that she would give Kevin whatever he wanted, but that they would have to go to a patch of weeds located a distance from the other two men.

After getting far enough out into the weeds, K.W. broke away from Kevin and ran to a nearby highway. A passing truck driver picked K.W. up and took her to a motel, from where the police were notified. "Kevin" was later identified as Keith Durbin.

## I.

### *Sufficiency*

■ Durbin contends the trial court erred in overruling his motion for a directed verdict because of the failure of the State to prove that he used force or threat of force to compel K.W. to perform fellatio. The use of force or threat of force is a required element of criminal deviate conduct. I.C. 35–42–4–2. The denial of a motion for directed verdict cannot be considered erroneous if there is sufficient evidence to sustain the conviction. *Patterson v. State* (1988), Ind., 532 N.E.2d 604, 607. When reviewing the question of whether sufficient evidence exists to support the verdict, we neither reweigh the evidence nor judge the credibility of witnesses. Rather, we look to the evidence most favorable to the judgment together with the reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the fact finder, the judgment will be affirmed. *Adams v. State* (1989), Ind.App., 542 N.E.2d 1362, 1366.

Durbin first urges that the evidence was insufficient to show that he as an individual used or threatened to use force to compel K.W. to perform fellatio. Durbin points out that he was not involved in the "heads-haking" incidents, did not prevent K.W. from discontinuing their first kiss or the act of oral sex, and that he in fact ordered Kalberer and Sanchez to retreat after K.W. "volunteered" her sexual services. Durbin

additionally maintains that no evidence was introduced showing a preconceived plan between the three men, and therefore that any evidence showing force or threat of force by Kalberer and Sanchez could not be attributed to him. Finally, Durbin argues that because the threatening situation was created by Kalberer and Sanchez only, and because K.W. chose to offer him sex in order to escape a threatening situation he was not responsible for, the evidence required a finding that she engaged in the act consensually. We disagree.

■ It is not necessary for the State to prove that a defendant personally committed every element of a crime charged. *Gage v. State* (1987), Ind., 505 N.E.2d 430, 434. When two or more people combine their efforts to commit a crime, each person is criminally responsible for all acts committed by his confederates. *Heironimus v. State* (1987), Ind., 511 N.E.2d 1071, 1073. In *Harris v. State* (1981), Ind., 425 N.E.2d 154, our supreme court noted that "A trier of fact may infer participation from a defendant's failure to oppose the crime, companionship with one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity." *Id.* at 156.

Here, the evidence most favorable to the State shows that Durbin ignored K.W.'s statements early in the incident to the effect that she did not want to have sex with him. Durbin later ignored K.W.'s pleas for help when Kalberer and Sanchez fondled her and warned her that "everything would go a lot easier" if she would cooperate. Durbin also conferred with Kalberer and Sanchez immediately prior to asking K.W. whether she would provide him with some form of sex. The question "why aren't you doing what you are supposed to do" was posed to Durbin during this conference. (Record at 88.) From all of this, the jury may reasonably infer that Durbin, Kalberer and Sanchez were acting in concert. As a result, all acts implying force committed by Kalberer and Sanchez are attributable to Durbin. Sanchez's statement that "everything would go a lot easier" with K.W.'s cooperation is alone sufficient threat of force to meet the requirements of

the criminal deviate conduct statute. The evidence is therefore sufficient to provide the element of force or threat of force commensurate with Durbin's conviction of criminal deviate conduct.

Durbin also contends that K.W. never indicated her lack of willingness to participate to such an extent that his conduct could be considered criminal.[1] This contention is meritless.

■ Resistance is a means by which a victim may indicate that the act is against her will, but it is not an element of deviate sexual conduct. *See Smith v. State* (1986), Ind., 500 N.E.2d 190, 192 (resistance not an element of rape). Physical resistance is not required if the victim is in fear of bodily harm. *Gilliam v. State* (1987), Ind., 509 N.E.2d 815, 817. The degree of resistance required, if any, depends upon the circumstances surrounding the incident. *Id.* It is for the trier of fact to determine if the victim acted reasonably and in good faith in resisting the attack. *Jenkins v. State* (1978), 267 Ind. 543, 372 N.E.2d 166, 167.

■ The facts and circumstances of this case show that a young woman was confronted in an isolated area by three men indicating their intent to have sex with her with or without her cooperation. K.W. testified that she cried hysterically throughout the incident and continually begged to be allowed to leave. This is sufficient manifestation of opposition from which a finding of reasonable resistance could be found. The facts also support a finding that further resistance would have been unreasonable or impossible. Nothing in our criminal code requires that one woman launch into physical battle with three men in order to convey the message that she is unwilling to participate in a group sexual encounter. Indeed, it has been stated that where circumstances exist under which resistance is unreasonable or impossible, the issue of resistance is moot. In such cases, compelled submission may be shown by evidence other than acts of resistance. *Woodson v. State* (1985), Ind., 483 N.E.2d 62, 63, *appeal after remand* 515 N.E.2d 1108. The jury would have been well within its boundaries as the trier of fact to have determined that the only choice K.W. had was between being sexually assaulted by three men or offering sex to one as a means of escaping. Indeed, K.W. testified that this was her assessment of the situation. This is sufficient evidence from which the jury could reasonably assume that the sex act was not consented to by the victim.

There was sufficient evidence presented to the jury for it to find beyond a reasonable doubt that Durbin committed the crime of criminal deviate conduct. Therefore, the trial court correctly overruled Durbin's motion for a directed verdict.[2]

## II.

### *Lesser–Included Offense*

■ Durbin also alleges error in the trial court's refusal to instruct the jury on bat-

---

1. Durbin contends in passing that the jury should have been instructed on the defense of consent. However, there is no indication from the record that Durbin tendered an instruction on the subject of consent. "A party cannot complain of incomplete or omitted instructions when he has failed to tender any instructions on that issue." *Ward v. State* (1988), Ind., 519 N.E.2d 561, 562. Nonetheless, we conclude that the subject was adequately covered by the instruction given which set forth the elements of criminal deviate conduct. The crime itself requires that the State prove that the victim was *compelled by force or threat of force.* A finding of force would necessitate eliminating the consent factor. Having properly charged the jury on the elements of the crime of criminal deviate conduct, we conclude that further instruction on consent was not required. *See Warren v. State* (1984), Ind., 470 N.E.2d 342, 344 (subject matter of refused consent instruction sufficiently covered by instructions charging the jury with the elements of rape, criminal deviate conduct and criminal confinement).

2. Durbin also urges that the admission of·K.W.'s out of court statements through the testimony of three witnesses amounted to abuse of the *Patterson* rule. See *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482 (prior out-of-court statements are admissible where declarant is available for cross-examination); *Stone v. State* (1989), Ind.App., 536 N.E.2d 534 (excessive admission of prior consistent statements found prejudicial). However, the record shows that Durbin failed to object to the admission of the hearsay statements. This issue is waived for the purposes of appeal. *Lenoir v. State* (1987), Ind., 515 N.E.2d 529, 529.

tery as a lesser-included offense. He argues that, based on the disagreement in the evidence presented concerning use of force, the jury could have found that the touching between he and K.W. occurred without consent, but not with force. We disagree.

 The test for determining whether the trial court erred in refusing a lesser-included offense instruction is: 1) whether the language of the statute and charging instrument necessarily included the lesser offense in the greater; and 2) whether evidence was introduced at trial to which the lesser-included offense would be applicable. *Roddy v. State* (1979), 182 Ind.App. 156, 394 N.E.2d 1098, 1107 *reh. denied*. In order to support the giving of a lesser-included offense instruction, evidence of the lesser-included offense must be substantial and without marked dispute, while there must be a serious dispute regarding the existence of the added element which distinguishes the greater offense from the lesser. *Id.; Tam v. State* (1987), Ind.App., 507 N.E.2d 993, 997, *trans. denied*.

Battery is a lesser included offense of criminal deviate conduct, in that proof of criminal deviate conduct first necessitates proof of all the essential elements of battery. *Id.* The distinguishing additional element of criminal deviate conduct is the requirement that the touching must have taken the form of an act involving "the sex organ of one person and the mouth or anus of another person ... or the penetration of the sex organ or anus of a person by an object." West's AIC 35–41–1–9 (deviate sexual conduct defined); *Easley v. State* (1981), Ind., 427 N.E.2d 435, 437.

Here Durbin concedes that the act of fellatio did occur, arguing only that the act was performed with the consent of both parties. Thus there is no dispute regarding the fact that the act distinguishing criminal deviate conduct from battery occurred. The only alleged "touching" at issue is the act of fellatio itself. Therefore, the evidence was not subject to the interpretation that the lesser offense was committed while the greater was not. If the jury believed that K.W.'s actions were en-

gaged in voluntarily, therefore finding Durbin not guilty of criminal deviate conduct, it would necessarily follow that Durbin was also innocent of battery. Under these circumstances, an instruction on battery as a lesser-included offense would have been an invitation for a compromise verdict. The second step of the test governing the subject of lesser-included offense instructions is specifically designed to avoid such a result. *McNary v. State* (1981), Ind., 428 N.E.2d 1248, 1251; *Roddy v. State, supra*. We find no error in the refusal of the battery instruction.

### III.

### *Sentencing*

 Lastly, Durbin contends that a sentence of eight years is unreasonable in light of the fact that his crime "only" amounted to "a few seconds of oral sex, which was unforced." (Brief of Appellant, 26.) While conceding that he received less than the ten (10) year presumptive sentence for a class B felony, Durbin contends that the trial judge subtracted fewer years from the presumptive sentence than warranted because of his irritation with Durbin over 1) his repeated references to K.W. as "the female" and 2) the fact that Durbin got his fiancee pregnant after charges were filed in this case.

 The determination of the sentence to be given to a defendant rests within the sound discretion of the trial court. *Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36. The record must disclose what aggravating or mitigating circumstances were considered when the basic sentence is increased or decreased. *Brown v. State* (1987), Ind., 512 N.E.2d 173, 177. We will not alter a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the offense and the offender. Indiana Rules of Procedure, Appellate Review of Sentences Rule 2; *Valle v. State* (1989), Ind., 542 N.E.2d 1339, 1340.

The record shows that the trial court listed several aggravating circumstances, included in which was a high risk that

Durbin would commit another crime due to an extensive criminal history composed of theft, conversion, and numerous traffic convictions. These findings are supported by the pre-sentence report. As a mitigating circumstance, the trial court found that Durbin was likely to respond affirmatively to short-term imprisonment.

There is no evidence that the trial judge's decision in this case was improperly influenced by his alleged personal animosity toward Durbin. In fact, the imposition of less than the presumptive term preponderates against that conclusion. As the State points out, the brevity of Durbin's crime does not diminish his culpability. While Durbin may feel he is entitled to the subtraction of additional years from his sentence, we do not find the trial court's failure to reduce his sentence further to be manifestly unreasonable in light of its consideration of legitimate aggravating factors.

Affirmed.

HOFFMAN and BUCHANAN, JJ., concur.