**Jarrod Michael WALL, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 35S00–8912–CR–935.**

Supreme Court of Indiana.

June 27, 1991.

William N. Mills, Mills & Northrop, Huntington, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

On August 3, 1989, appellant pled guilty but mentally ill to a murder charge. He was sentenced to forty (40) years enhanced by twenty (20) years for aggravating circumstances.

The facts are: In January of 1989, appellant and John Velasquez planned to burglarize the home of Eldon Anson in Huntington County. The purpose of the burglary was to steal guns. Appellant disliked Anson because he believed Anson was a homosexual drug abuser who might have been responsible for his uncle developing Acquired Immune Deficiency Syndrome (AIDS).

On the night of February 3, 1989, appellant went to Velasquez' home, and following a discussion, he requested that Erick Esch help him burglarize Anson's home. Velasquez informed appellant and Esch that he was unable to go to Anson's home, but he did provide them with jackets, a satchel, and a knife. Appellant was armed with a loaded .22 caliber pistol and a hatchet that he had purchased.

Appellant and Esch drove to Anson's house and rang the doorbell. Anson answered the door, and appellant told him

they were interested in looking at one of his old vehicles. Anson let them in and then led them outside where he showed them vehicles in his garage and driveway. Appellant grew angry when he heard Anson's voice and thought of his uncle. As Anson was unlocking one of the vehicles, appellant pulled out his gun and shot Anson in the head. Appellant then shot Anson five more times. Upon noticing that Anson was not dead, appellant went to his vehicle to retrieve his hatchet and returned to strike Anson in the head. As appellant struck Anson, he covered his head with his hands further angering appellant and prompting him to strike Anson's hands. He also struck Anson in the back and on the buttocks.

Believing Anson to be dead, appellant and Esch went into Anson's home to look for the guns. When they were unable to locate the guns, appellant took a radio. Appellant and Esch hid a bloody jacket in a trash bin and threw the hatchet in the river. Anson did not die until four days later.

On February 24, appellant, Velasquez, and another individual burglarized the home of Deputy Sheriff Larry Kingrey, and a handgun was stolen. Thereafter, subsequent crimes relating to the possession of the handgun took place. Following his arrest and murder charge, appellant testified at the juvenile waiver hearing of codefendant Velasquez. However, before doing so the State extended to him, in exchange for his testimony, immunity from prosecution for burglary and subsequent crimes relating to the possession of the handgun. The Court granted appellant immunity pursuant to a written order which stated:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Jarrod Wall be and he is hereby granted immunity and complete discharge from prosecution and shall not be subject to penalty or forfeiture for or on account of the evidence produced or the testimony elicited.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Jarrod Wall be and he is hereby granted immunity and complete discharge from prosecution for the burglary of the dwelling house of Larry W. Kingrey in Huntington, Indiana, on February 24, 1989, the taking of said weapon from that house, and the secondary crimes arising from the possession and discharge of said weapon through April 10, 1989, occuring [sic] in Huntington County, Indiana, in Marion County, Indiana, and in the State of Indiana, from February 24, 1989, through April 10, 1989."

▇ During appellant's sentencing hearing, the judge questioned him regarding the burglary and theft on February 24. In addition, the judge questioned appellant concerning other acts involving the weapon, which appellant admitted. In listing the aggravating circumstances, the court referred to these crimes committed after the murder of Anson as evidence that appellant would likely commit other crimes and that he lacked remorse for the killing.

Ind.Code § 35–37–3–3 provides:

"(a) Upon the request of the prosecuting attorney, the court shall grant use immunity to a witness. The court shall instruct the witness, by written order or in open court, that any evidence the witness gives, or evidence derived from that evidence, may not be used in any criminal proceeding against that witness, unless the evidence is volunteered by the witness or is not responsive to a question by the prosecuting attorney. The court shall instruct the witness that he must answer the questions asked and produce the items requested."

Assuming for the sake of argument that the use-immunity agreement was violated, any error would be harmless due to the court's finding of other aggravating circumstances supporting the enhanced sentence. We find no reversible error.

Appellant contends the imposition of a sixty (60) year sentence is manifestly unreasonable.

▇ He argues the sentencing order was inconsistent. The court sentenced appellant as follows:

"The defendant shall be committed to the custody of the Department of Corrections for classification and confinement for a period of forty (40) years to which the court now adds an additional twenty (20) years for aggravating circumstances making a total period of confinement a period of sixty (60) years. The Court recommends a minimum security facility. The Court recommends that the defendant be evaluated and then treated in such a manner as is pyschiatrically [*sic*] indicated for his mental illness."

We note that appellant has failed to cite any authority to support his argument. Thus this issue is waived. *See* Ind.Appellate Rule 8.3(A)(7). However, notwithstanding the waiver, appellant pled guilty but mentally ill. Ind.Code § 35–36–2–5 provides:

"(a) Whenever a defendant is found guilty but mentally ill at the time of the crime, or enters a plea to that effect that is accepted by the court, the court shall sentence him in the same manner as a defendant found guilty of the offense."

We find the trial court was not inconsistent. The trial court's recommendation regarding evaluation and treatment followed the procedure as provided in the statute.

■ Appellant argues the sentencing order failed to identify significant mitigating and aggravating factors and failed to articulate a balancing process.

As this Court stated in *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 71–2 the sentencing statement must contain the following:

"(1) it must identify all of the significant mitigating and aggravating circumstances, (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) the court must evaluate and balance the mitigating circumstances against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances."

Aside from the immunity question dealt with above, the court found numerous aggravating circumstances including:

1. A reduced sentence would depreciate the seriousness of the offense.

2. Appellant needs rehabilitative treatment provided by commitment to a penal facility.

3. Appellant planned the murder premeditatedly as demonstrated by his preparation for the crime.

4. Appellant planned to go to the hospital and tamper with Anson's I.V. when he learned Anson survived for several days following the attack.

In addition, the court stated that it received letters from appellant's family, friends, and teachers indicating his good character and accomplishments. However, the court found the aggravating factors outweighed any mitigating factors and enhanced the sentence. In addition, the record shows the court went to great lengths in determining appellant's sentence. In fact, the court noted having "agonized for hours" in determining the sentence. The court took into consideration the presentence report and the arguments of counsel and witnesses. We find no error in the court's findings.

■ Appellant contends the trial court ignored evidence of his remorse. However, a review of the record shows this not to be the case. Instead, the court found appellant not truly remorseful based upon his acts following the murder. In fact, the court noted that appellant mentioned going to the hospital to tamper with the victim's medical equipment. We find no error.

■ Appellant argues the trial court failed to recognize as a mitigating circumstance his mental illness. In the instant case, the court considered the presentence report, which contained reports of doctors who evaluated appellant. The reports indicated that appellant did not suffer from any neurotic disorder or any emotional disturbance. We cannot say the court failed to consider the evidence as a mitigating factor. We find no error.

■ Appellant contends this Court should determine an appropriate sentence.

In *Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36, this Court stated:

"The determination of the sentence to be given to a particular defendant is within the discretion of the trial court and will be reversed only upon a showing of manifest abuse of discretion. (Citation omitted.) The trial court need list only one aggravating factor to support an enhanced sentence. (Citation omitted.)"

In addition, the finding of mitigating factors is not mandatory but rests within the trial court's discretion. *Graham v. State* (1989), Ind., 535 N.E.2d 1152. This Court will not alter a sentence which is authorized by statute unless the sentence is manifestly unreasonable. *Valle v. State* (1989), Ind., 542 N.E.2d 1339.

Given the facts of this case, we cannot say a reasonable person could not find the sentence appropriate. We find the sentence to be reasonable.

■■■ Appellant contends the trial judge failed to disclose to him that the victim had consulted with him once.

In his motion to correct error, appellant contends that newly-discovered evidence revealed that the trial judge had been consulted by the victim while the trial judge was in private practice. Appellant requested the court to set aside all previous rulings. In denying appellant's request, the trial judge stated:

"In 1982 or 1983, three automobiles were stolen from the decedent from his front yard. Time passed and the decedent felt the police were not moving rapidly enough on the case. The decedent came to my office without any appointment. He told me what he knew about the theft. He showed me the titles to his cars. I asked him about insurance. He had insurance. I told him that there was no reason for any action on my part; that he should work with his insurance company. He left. That's my relationship with Eldon Anson. I did not represent him. The advice was to see his insurance company. I never filed a lawsuit in any court for and on behalf of the decedent. I never entered an appearance in any court for the decedent. And it was so unimportant to me that I did not even send a bill nor did I ever receive any payment."

To support his position, appellant cites *Ind. Judicial Conduct Canon 3(C)(1)* which provides that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. In the instant case, appellant has failed to show in any way that the trial judge was biased or prejudiced against him. It is obvious that the trial judge clearly explained his relationship with the decedent. His impartiality can not reasonably be questioned in this case. We find no error.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

At the time appellant went on this destructive rampage and killed, he was seventeen years old, had no history of criminal conduct, had been an able and willing worker, good student, 4–H club member and church member, and was suffering from a delusional paranoid disorder. These are significant mitigating factors which are clearly supported by the record. In any felony sentencing process, a personal history of this character has a commanding mitigating value, as it indicates a willingness to cooperate with others and some belief in the ethical value of aiding others.

The record of the sentencing hearing reveals that the trial judge had given great consideration to Wall's sentence. He "agonized for hours" over the decision, a matter which he had "considered every side." He specifically stated that he had considered the written presentence report, the arguments of counsel, witnesses and exhibits. After having done these things, and in specifically stating his reasoning as is required by law, *Henderson v. State* (1986), Ind.,

489 N.E.2d 68, the court ultimately concluded:

> The aggravating circumstances outweigh any mitigating circumstances that exist and warrant the increase of the sentence. The mitigating circumstances urged by defense counsel are more in the form of a final argument than a factual situation that merits mitigation.

This summary rejection of the body of evidence of migitating circumstances is error. It is tantamount to overlooking mitigating circumstances supported by the record. *Tunstill v. State* (1991), Ind., 568 N.E.2d 539. However, the result of the error in this instance is a manifestly unreasonable sentence. I would remand and order the imposition of the standard forty-year sentence.